IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01015-MJW-MEH


JAMES D. CALDWELL, Individually,

     Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY, a Maryland corporation,

     Defendant.

---

## ORDER REGARDING
## DEFENDANT GEICO GENERAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 24)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


This matter was before the court on March 3, 2010, for hearing on the Defendant GEICO General Insurance Company's Motion for Summary Judgment (docket no. 24). The court has reviewed the subject motion (docket no. 24), the response (docket no. 25), and the reply (docket no. 31). In addition, the court has taken judicial notice of the court's file and has considered applicable Federal Rules of Civil Procedure and case law. Lastly, the court has considered oral argument by the parties. The court now being fully informed makes the following findings of fact, conclusions of law, and order.

## I. FINDINGS OF FACT

1.     The Plaintiff James D. Caldwell (Plaintiff) is a resident of the state of Colorado with a primary address of 15 N. Carr Street, Lakewood, CO 80226.

2.     The Defendant GEICO General Insurance Company (Defendant) is a Maryland corporation with a principal office address of 5260 Western Avenue, Chevy Chase, MD 20815.

3.     On October 15, 2007, the Plaintiff was injured in an auto accident while driving a 2006 Genuine Buddy 50 Scooter.  The driver of the other vehicle, Ms. Brittany C. Espinosa, was at fault for the accident.  Her involvement is not at issue in the present litigation.

4.     Ms. Espinosa's motor vehicle was insured under an auto insurance policy that met or exceeded the statutory minimum coverage under Colorado law, and the policy was in effect at the time of the accident.

5.     The Plaintiff's motor vehicle was insured under an auto insurance policy providing coverage that met or exceeded the statutory requirements under Colorado law, and the policy was in effect at the time of the accident.

6.     The Plaintiff's past and future damages, including pain and suffering, excluding exemplary damages, exceed the policy limits for liability coverage under the insurance policy applicable to Ms. Espinosa's motor vehicle.

7.     The Plaintiff alleges certain injuries, damages, and losses that occurred as a result of the accident, however, the parties to this litigation have bifurcated the

issues of liability and damages and agreed to attempt to resolve the matter without further litigation in the event of an adverse judgment against the Defendant. Neither party has presented evidence of damages in this action.

8. The subject policy, policy no. 4090035397, was issued by Defendant on February 13, 2007 (Ex. 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment).

9. Page 006 of the Policy reads "Pennsylvania Family Automobile Insurance Policy" (*Id.*, p. 006).

10. The policy provides uninsured/underinsured (UM/UIM) coverage in the amount of $300,000.00 per person in the event of an accident where the at-fault driver is either uninsured or underinsured (*Id.*, p. 039).

11. Section IV of the Policy defines the terms and conditions of the UM/UIM coverage offered by the policy (*Id.*, pp. 017- 020). A later section of the policy purports to change the terms and conditions of the section of the policy defining the UM/UIM coverage of the policy, to apply under Pennsylvania law (*Id.*, pp. 027-036).

12. The policy purports to preclude coverage from any vehicle not listed on the policy, under Exclusion A472, under Pennsylvania law (*Id.*, p. 033).

13. The policy lists only a 1991 Buick as a covered vehicle under the policy (*Id.*, p. 039).

14.     The policy purports to implement Pennsylvania law to govern the terms and conditions of the contract (*Id.*, p. 021).

15.     The policy was issued and delivered in Colorado.

16.     At the time of the sale of the policy, and during the policy period, the 1991 Buick was licensed for highway use in Colorado.

17.     The contract lists the named insureds as Karla H. Caldwell and James D. Caldwell with an address of 15 N. Carr Street in Lakewood, Colorado (*Id.*, p. 003).

18.     At the time of the formation of the contract, and all times thereafter, the Plaintiff and his wife, Karla H. Caldwell, the named insureds, lived in Lakewood, Colorado (Exhibit 2 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dep. of James Caldwell, pp. 6-7; Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dep. of Karla Caldwell, p. 5).

19.     The named insureds have a daughter, Suzanna Caldwell, who left Colorado in early 2007 to move temporarily to Pennsylvania expressly for the purpose of attending a sixteen-month educational program in Monessen, Pennsylvania (*Id.*, p. 10).  Suzanna Caldwell drove the 1991 Buick with her so that she would have transportation during the pendency of her stay in Pennsylvania (*Id.*, p. 11).

20.     Before leaving to attend school in Pennsylvania, Suzanna lived at home with Karla and James Caldwell (*Id.*, p. 12).

21.     Prior to attending school in Pennsylvania, Suzanna Caldwell held numerous temporary jobs while she figured out what she wanted to do for a career. During that time period, she drove the 1991 Buick in question in the State of Colorado (*Id.*).

22.     In February 2007, when the Caldwells purchased the subject insurance policy, they owned the 1991 Buick listed on the policy in question (*Id.*, p. 14).

23.     Though the Plaintiff's daughter was to drive the vehicle during the pendency of her stay in Pennsylvania, the vehicle was purchased in Colorado, registered in Colorado, and was to be driven in the state of Colorado when the Plaintiff's daughter was not driving the vehicle in the state of Pennsylvania.

24.     Karla Caldwell was responsible for the purchase of the subject matter insurance policy (*Id.*, p. 19).

25.     Karla Caldwell indicated that sometime in early 2007, she contacted the Defendant to notify them that her daughter would be driving the 1991 Buick to Pennsylvania to attend a school there (*Id.*, p. 21).

26.     She stated that the agent said that they (Defendant) would make a notation on the file indicating that Suzanna Caldwell would be driving the vehicle to Pennsylvania (*Id.*, p. 21).

27.     Karla Caldwell stated that an employee of Defendant later called her back, stating that the Caldwells would need to purchase a Pennsylvania Policy to cover Suzanna Caldwell while she attended school in Pennsylvania (*Id.*, p. 22). [1]

28.     Karla Caldwell stated that she contacted Defendant directly through their 1-800 telephone number to notify them, and that it was her understanding that the purchase of the policy occurred through Defendant directly, not through an independent insurance agent (*Id.*, p. 25).

29.     The agent was acting in the scope and course of his employment with Defendant, and was therefore an employee of the Defendant (Ex. 6 to Defendant's Motion for Summary Judgment, Aff. of Ruben Garay).

30.     Karla Caldwell said that she asked the agent why it was necessary to purchase a separate policy, inasmuch as the situation was merely "temporary" (Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment**,** Dep. of Karla Caldwell, p. 22).

31.     Karla Caldwell stated that the agent indicated to her that it "was just procedure" to issue a separate policy in such circumstances (*Id.*, p. 22; *see* Ex. 6 to Defendant's Motion for Summary Judgment, Aff. of Ruben Garay).

---

[1] The Defendant has stipulated that this individual was a GEICO employee, thus issues of agency, apparent agency, and contractor status are not at issue for the purposes of this litigation.

32.     Karla Caldwell stated that the agent said that this "[was] just the way we do it" (Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment**,** Dep. of Karla Caldwell, p. 22).

33.     As a result of the purchase of the additional policy, the Caldwells' premiums increased (*Id.*, p. 23).

34.     Karla Caldwell stated that the policy was issued to her and her husband, James D. Caldwell, the policy was in their names and listed their address, and she assumed the policy would subsequently offer them protection as well (*Id.*, Ex. 1 to Dep., E-mail of Karla Caldwell).

35.     While attending school in Pennsylvania, Suzanna Caldwell returned to Colorado on several occasions, including a visit in November 2007, when she returned to visit her father, James D. Caldwell, in the hospital, and shortly thereafter December 2007 for the Christmas holidays (*Id.*, pp. 16-17).

36.     When Suzanna Caldwell completed her course in Pennsylvania in May 2008, she returned to Colorado (*Id.*, Ex. 1 to Dep. of Karla Caldwell; Ex. 2 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dep. of James Caldwell, p. 26).  The Caldwells had the 1991 Buick shipped back to Colorado upon completion of Suzanna Caldwell's course of study (Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment**,** Dep. of Karla Caldwell, p. 17).

37.     The 1991 Buick remained registered in Colorado throughout the time period Suzanna Caldwell was enrolled in school in Pennsylvania (*Id.*, p. 25).

38.     Suzanna Caldwell retained her Colorado license while she was attending school in Pennsylvania (*Id.*, p. 25).

39.     After the October 15, 2007, accident, the Plaintiff made a claim for underinsured motorist (UIM) benefits under the policy in question.  The Defendant denied coverage, asserting that the 2006 Genuine Buddy 50 Scooter was an owned and unscheduled vehicle, and under the terms of the policy, Amendment A-472, the vehicle was excluded from coverage (Ex. 4 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Letter from Claims Adjustor Licia Wawak).

40.     The Plaintiff subsequently brought this action for declaratory judgment to seek a declaration that the subject policy provides underinsured motorist (UIM) coverage under Colorado law (Ex. 5 to Plaintiff's Response to Defendant's Motion for Summary Judgment; First Am. Compl.).

41.     In an affidavit, provided by Ruben Garay, an employee of Defendant, Mr. Garay states that it is Defendant's corporate policy to require the issuance of a separate insurance policy when the Defendant is notified that an insured vehicle will be garaged in another state for a period of time that exceeds the policy period of an existing policy (Ex. 6 to Plaintiff's Response to Defendant's Motion for Summary Judgment, ¶¶ 3, 5).

## II. CONCLUSIONS OF LAW

1.      This court has jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $ 75,000.00.

2.      Venue is proper in this court pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district, and the Defendant is subject to personal jurisdiction in this judicial district.

### A.      Count I - Declaratory Judgment

1.      Because of both the disparity of bargaining power between insurer and insured and the fact that materially different coverage cannot be readily obtained elsewhere, automobile insurance policies are generally not the result of bargaining. Huizar v. AllState Ins. Co., 952 P.2d 342, 344 (Colo. 1998).

2.      Unlike a negotiated contract, an insurance policy is often imposed on a "take-it-or-leave-it" basis.  Therefore, the court assumes a "heightened responsibility" in reviewing insurance policy terms to ensure that they comply with "public policy and principles of fairness."  Thompson v. Maryland Cas. Co., 84 P.3d 496, 501-02 (Colo. 2004).

3.      Any provision of an insurance policy which violates public policy and principles of fairness is unenforceable.  Huizar, 952 P.2d at 344.  A contractual provision is void if the interest in enforcing the provision is clearly outweighed by a

contrary public policy.  *Id.*  This principle has been extended to the conditions and terms of an insurance contract that undermine legislatively-expressed public policy. *Id.*

4.  Colorado has adopted the "most significant relationship" test under the Restatement (Second) of Conflict of Laws for both tort and contract actions.  *See* <u>ITT Spec. Risk Servs. v. Avis Rent A Car Sys., Inc.</u>, 985 P.2d 43, 47 (Colo. App. 1999); <u>Wood Bros. Homes, Inc. v. Walker Adjustment Bureau</u>, 198 Colo. 444, 447-48, 601 P.2d 1369, 1372 (1979).

5.  Once the state having the most significant relationship is identified, the law of that state is then applied to resolve the particular issue.  <u>Wood Bros. Homes, Inc.</u>, 198 Colo. at 447-48, 601 P.2d at 1372.

6.  The Restatement (Second) of Conflict of Laws provides guidance for the election of the proper forum.  Section 187 provides in pertinent part:

§ 187 Law of the State Chosen by the Parties

1.  *The law of the state chosen by the parties to govern their contractual rights and duties will be applied* if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

2.  The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the

particular issue is one which the parties could not have resolved

by an explicit provision in their agreement directed to that issue,

*unless either*

    (a)    *the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice*, or

    (b)    *application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties*.

    3.    In the absence of a contrary indication of intention, the

reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Laws, § 187 (1971)(emphasis added).


Comment b. describes the inapplicability of choice of law provisions if

consent was not properly obtained.  Comment b. states:

    b.    *Impropriety or mistake*: A choice of law provision, like any other contractual provision, will not be given effect of the consent of

one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained by improper means or by mistake will be determined by the forum in accordance with its own legal principles. *A factor which the forum may consider is whether the choice-of-law provision is contained in an "adhesion" contract, namely one that is drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms.* Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print. *Common examples are* tickets of various kinds and *insurance policies.* Choice-of-law provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.

Restatement (Second) of Conflict of Laws, § 187, Comment b. (1971) (emphasis added).

7.  Courts interpret the language of insurance policies liberally to protect the reasonable expectations of the insureds and intended beneficiaries, "even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *See* Pirkheim v. First Unum Life Ins., 229 F.3rd 1008, 1011 (10th Cir. 2000) *(citing* Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 386 (9th Cir. 1994)).

8.  "Under this modern doctrine, which derived from the law of adhesion contracts and construction of ambiguities in insurance policies . . . an insurer that wishes to avoid liability under an insurance contract must not only use clear and unequivocal language evidencing its intent to do so, but it must also call such limiting conditions to the attention of the insured." *Id.* (citation and quotations omitted).

9.  Section 188 of the Restatement (Second) of Conflict of Laws provides guidance for interpretation of a contract *in the absence of an effective choice by the parties.* It states:

§ 188 Law Governing In Absence of Effective Choice by the Parties

(1)  *The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most*

*significant relationship to the transaction and the parties under the principles stated in § 6.*

(2)    *In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:*

(a)    *the place of contracting;*

(b)    *the place of negotiation of the contract;*

(c)    *the place of performance;*

(d)    *the location of the subject matter of the contract, and*

(e)    *the domicil, residence, nationality, place of incorporation and place of business of the parties.*

*These contacts are to be evaluated according to their relative importance with respect to the particular issue.*

(3)    *If the place of negotiating the contract and the place of the performance are in the same state, the local law of this state will usually be applied . . . .*

Restatement (Second) of Conflict of Laws § 188.

10.     Choice of law principles that may be taken into account to determine the most significant relationship and proper choice of law include:

§ 6 Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, § 6 (1971); *see* <u>Wood Bros. Homes, Inc.</u>, 198 Colo. at 447-48, 601 P.2d at 1372.

11.     The comment on section 188, subsection (1), states that the purposes and policy aims of the interested states and interested parties are critical in evaluating the factors listed.  *See* Restatement (Second) of Conflict of Laws, § 188, Comment to Subsection (1).  It notes the "justified expectations" of the parties and providing "certainty" and "predictability" are important in evaluating the relevant factors.  *Id.*  The justified expectations of the parties are of considerable importance in the area of contracts, and relatively less so in torts.  *Id.*

12.     In the instant case, at the time that the policy was sold, the Defendant did not bring the choice of law provision to the attention of its insured or otherwise explain the significance of this provision to the insured.  *See* Leland v. Travelers Indem. Co. of Ill.*,* 712 P.2d 1060, 1064 (Colo. App. 1985).

13.     At the time that the policy was sold, there was no "meeting of the minds" regarding the choice of law clause, in that the Caldwells entered into the agreement as existing customers of the Defendant from a disparate bargaining position.  The Caldwells can "not expected to be highly sophisticated in the art of reading [insurance contracts]," whereas Defendant writes and evaluates claims for thousands of policies on a daily basis.  *See* Wagner v. Travelers Prop. Cas. Co. of Am., 209 P.3d 1119, 1126 (Colo. App. 2008).  Therefore, the Caldwells cannot reasonably have been expected to understand the significance of the Pennsylvania choice of law clause, and the limiting restrictions of the policy.

14.     Under Section 187 to the Restatement (Second) of Conflict of Laws, the terms of the contract were presented on a "take-it-or-leave-it" basis.  *See Restatement (Second) of Conflict of* Laws, § 187, Comment b. (1971).  Karla Caldwell, Plaintiff's wife, was told that a new policy needed to be issued because that "was just procedure" and that this "[was] just the way we do it" to issue a separate policy in such circumstances.  When asked why, the Defendant gave no further explanation about why issuing a new policy was required. (Plaintiff's Ex. 3 to Response to Defendant's Motion for Summary Judgment**,** Dep. of Karla Caldwell, p. 22).  Likewise, in the affidavit provided by Ruben Garay, the Defendant gave no real explanation for why it chooses to issue a different policy in such circumstances (See Ex. 6 to Defendant's Motion for Summary Judgment, Aff. of Ruben Garay).

15.     The Defendant's disparate position in bargaining power, combined with its failure to explain the consequences of the terms of the new policy, negates the insurer's intention to limit the terms of the policy to something more restrictive than the Plaintiff's existing policy.  *See* Leland*,* 712 P.2d at 1064.

16.     Under these circumstances, the designation of the policy as a Pennsylvania policy and the parties' choice of Pennsylvania law was not effective under the Restatement (Second) of Conflict of Laws, § 187.

17.     The Defendant's unilateral selection of Pennsylvania law occurred as a result of an arbitrary internal company procedure of the Defendant that does not comply with Colorado law.

18.     Under these circumstances, there is no reasonable basis for the parties' choice of Pennsylvania law under the Restatement (Second) of Conflict of Laws, § 187.

19.     The application of Pennsylvania law to interpret the policy conflicts with a fundamental policy of Colorado as reflected by the General Assembly in C.R.S. § 10-4-609(1) under the Restatement (Second) of Conflict of Laws, § 187.

20.     The Defendant cannot by contract override public policy limitations on contractual power applicable in a state with materially greater interests in the transaction than the state whose law is contractually chosen.  *See* Barnes Group, Inc. v. C & C Prods., Inc.*,* 716 F.2d 1023, 1029 (4th Cir. 1983); Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2nd Cir. 1984).

21.     Because the parties' choice of Pennsylvania law was not effective, and the application of Pennsylvania law would conflict with a fundamental policy of Colorado, the "most significant relationship" test under the Restatement (Second) of Conflict of Laws, § 188 controls.  *See* Restatement (Second) of Conflict of Laws, § 187.

22.     Despite its label as a "Pennsylvania Automobile Policy", and its Pennsylvania choice of law clause, the subject matter insurance policy, GEICO policy no. 4090035397, is a Colorado contract.

23.     A balancing of factors under § 188 indicates that Colorado has the most significant relationship to the parties.  To wit, those factors include:

a)      The Caldwells, including their daughter Suzanna, are all residents of the state of Colorado;

b)      The vehicles owned and driven by Plaintiff James Caldwell, Karla Caldwell, and Suzanna Caldwell, including the 1991 Buick, and the Scooter upon which Mr. Caldwell was injured, are all registered in Colorado;

c)      The vehicles, including the 1991 Buick which Suzanna took with her to Pennsylvania, and the Scooter upon which Plaintiff Caldwell was injured, could reasonably have been expected to be driven in the state of Colorado;

d)      The subject matter policy was negotiated, issued, and paid for in the state of Colorado;

e)      The Defendant regularly conducts business in the state of Colorado;

f) Two of the three drivers, including the named insureds, would be operating vehicles in Colorado during the policy period;

g) The state of Colorado could reasonably have been expected to be the primary place of performance under the policy;

h) The Plaintiff's daughter, Suzanna Caldwell, was not moving out of state permanently, rather only for a well-defined, finite period of time;

i) During the time period in which daughter Suzanna Caldwell was to reside in the state of Pennsylvania, as a student, she would have remained a resident-relative for purposes of the uninsured motorist statute, C.R.S. § 10-4-609;

j) The insureds stated that they assumed, and no one told them differently, that the policy in question would offer them coverage as named insureds in the state of Colorado.

24.     Because the only contact with the state of Pennsylvania was the risk arising from Suzanna Caldwell driving the 1991 Buick in that state while attending school, the contacts with the state of Pennsylvania were *de minimis*.

25.     The Due Process Clause of the Fourteenth Amendment states "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

26.     "In deciding constitutional choice of law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, [the Supreme Court of the United States] has traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation." Allstate Ins. Co. v. Hague, 449 U.S. 302, 308 (1981).

27.     "In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, . . . the Court has invalidated the choice of law of a State which has had no significant contact or aggregation of contacts, creating state interests, with the parties and the occurrence or transaction." *Id.*

28.     "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 312-13.

29.     An analysis of the aggregation of contacts indicates that Colorado law, not Pennsylvania law, is the proper choice of law in the instant case, in order to prevent a result that is fundamentally unfair under the Due Process Clause of the Fourteenth Amendment.  The aggregation of contacts in favor of application of Colorado law include:

a)      James, Karla, and Suzanna Caldwell were all residents of the state of Colorado both when the subject matter policy was purchased, and for the duration of coverage of the subject matter policy;

b)      Defendant conducts business in the state of Colorado and maintains a registered agent in Colorado. *See* Hague, 449 U.S. at 317-18;

c)      Both James Caldwell and Karla Caldwell were members of the Colorado workforce.  See Id. at 313-14;

d)      Colorado was the place of contracting (See Ex. 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 003);

e)      Colorado was the place of negotiation;

f)      Colorado was the primary place of performance under the policy, e.g., the Caldwells owned and operated several vehicles as named insureds, all of which were registered in Colorado, driven in Colorado, and which ostensibly would have been covered in Colorado in the

event of an accident. (See Ex. 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 003);

g) Suzanna Caldwell was not moving out of state permanently, rather for a finite, measurable period of time, during which she retained Colorado residency status. (See Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dep. of Karla Caldwell, p. 22);

h) Karla Caldwell, who entered into the contract on behalf of the Plaintiff, indicated that she assumed, and no one told her otherwise, that the policy in question would cover her and Plaintiff James Caldwell in the state of Colorado. (See Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dep. of Karla Caldwell, Ex. 1 to Dep., Email of Karla Caldwell);

i) Two out of three drivers in the Caldwell household would be driving owner vehicles in Colorado for the duration of the policy period, while only one vehicle would be driven in Pennsylvania, and therefore, the extent of the insured risk in Colorado far exceeded the extent of the insured risk in Pennsylvania;

j) The accident in question forseeably occurred in the state of Colorado.

30.     The contacts with the state of Pennsylvania were *de minimis*, in that the only contact with that state would have been the risk arising from Suzanna Caldwell driving the 1991 Buick while attending school there.

31.     Under these circumstances, because the contacts with the state of Pennsylvania would have been *de minimis*, and the contacts with the state of Colorado substantial, the application of Pennsylvania law would be fundamentally unfair and would violate the Due Process Clause of the Fourteenth Amendment. *See* Hague*,* 449 U.S. at 309-11.

32.     In contrast, the aggregation of contacts between the state of Colorado and the parties, occurrence, or transaction compels the conclusion that application of Colorado law to interpret the policy would not violate due process.  *Cf*. Hague, 449 U.S. at 313-20 (stating that application of Minnesota law did not violate due process where Minnesota had significant aggregation of contacts with the parties and the occurrence).

33.     Accordingly, application of Pennsylvania law to interpret the policy would violate the Due Process Clause of the Fourteenth Amendment.

34.     The "owned but not insured" exclusion in the subject matter policy is void and unenforceable as contrary to public policy under Colorado law.  *See* Jaimes v. State Farm Mut. Auto. Ins. Co., 53 P.3d 743, 745-47 (Colo. App. 2002).

35.     Because the subject matter insurance policy must be interpreted under Colorado law, the insurance policy must adhere to C.R.S. § 10-4-609.

36.     The policy, as written, does not comport with C.R.S. § 10-4-609, and as such, its terms must be reformed to meet that statute.

37.     C.R.S. § 10-4-609 provides the criteria for issuing uninsured/underinsured coverage in the state of Colorado.  It reads:

> (1)(a) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be *delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state* unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42-7-103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

C.R.S. § 10-4-609(1)(1979)(emphasis added).

38.     Any policy that limits the UM/UIM benefits under the circumstances where the General Assembly intended for benefits to be recovered is invalid.  *See* Massingill v. State Farm Mut. Auto Ins. Co., 176 P.3d 816, 820 (Colo. App. 2007), cert. denied, 2008 WL 434588 (Feb. 19, 2008) (en banc)*,*  Newton v. Nationwide Mut. Fire Ins. Co., 197 Colo. 462, 466-67, 594 P.2d 1042, 1044-45 (1979).

39.     There is a strong public policy in the State of Colorado favoring complete recovery of benefits under the Uninsured Motorist Statute.  *See* Continental Divide Ins. Co. v. Dickinson, 179 P.3d 202 (Colo. App. 2007).

40.     The purpose of the statute is to ensure the widespread availability of UM/UIM coverage.  Bernal v. Lumbermens Mut. Cas. Co., 97 P.3d 197, 202 (Colo. App. 2003).

41.     The Colorado Supreme Court has held "[a]n insurance contract that denied statutorily mandated coverage is void and unenforceable."  DeHerrera v. Sentry Ins. Co., 30 P.3d 167, 173 (Colo. 2001).

42.     Furthermore, uninsured/underinsured benefits follow the person, not the vehicle.  *Id.* at 175.  That coverage follows the insured regardless of the vehicle occupied by the insured at the time of the accident.  *Id.* at 176.

43.     The Defendant impermissibly attempted to limit underinsured motorists coverage through an Amendment under Exclusion A472 of the policy.  That amendment creates an "owned but not insured" exclusion that excludes

underinsured motorists coverage for a vehicle not listed on the policy (See Ex. 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment).

44.     Such an exclusion is void and unenforceable under Colorado law because it restricts coverage below statutory minimum requirements.  *See* DeHerrera*,* 30 P.3d at 173-76; C.R.S. § 10-4-609.

45.     Because the policy was delivered and issued in Colorado and the 1991 Buick was licensed for highway use in Colorado, the Plaintiff must be given the full statutory protection under C.R.S. § 10-4-609.  Failure to tender coverage under the policy because of the Amendment under Exclusion A472 violates Colorado law. *See* Jaimes, 53 P.3d at 745-47.

46.     The Plaintiff is legally entitled to recover underinsured motorist benefits under the policy pursuant to C.R.S. § 10-4-609 and the terms of the policy.

47.     The Defendant has a contractual obligation to satisfy the Plaintiff's claim for underinsured motorist benefits under the policy.

**B.     Count II – Breach of Contract**

1.     In Colorado, a Plaintiff must prove the following elements to prove breach of contract: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; (4) resulting damages to the plaintiff.  Western Dist. Co. v. M. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992).

2.      The insured has the burden to prove that the uninsured/underinsured motorist was negligent and the extent of damages.  <u>Brekke v. State Farm Mut. Auto. Ins. Co.</u>, 81 P.3d 1101, 1103 (Colo. App. 2003).  If the insured meets this burden, then the insurer is under a statutory and contractual duty to compensate the insured for his or her losses.  *Id.*

3.      At the time of the accident, the Plaintiff was a "named insured" driving an "insured motor vehicle" under the terms of the policy (See Ex. 1 to Plaintiff's Response to Defendant's Motion for Summary Judgment, pp. 003, 017-18).

4.      Under the Plaintiff's insurance policy, the Defendant has a contractual obligation to provide underinsured motorist benefits to the Plaintiff.

5.      Defendant refused to pay underinsured motorist benefits under the terms of the contract (See Ex. 4 to Plaintiff's Response to Defendant's Motion for Summary Judgment).

6.      The Defendant's refusal to pay underinsured motorist benefits to the Plaintiff is a breach of the Defendant's contractual obligations under the policy.

7.      As a result of the Defendant's breach of its contractual obligations, the Plaintiff has been denied underinsured motorist benefits under the policy.

8.      The Defendant is liable for breach of contract.

**C.**      **<u>Count III – Negligence/Respondeat Superior Liability</u>**

1.      As discussed above, any policy that purports to limit benefits under circumstances where the General Assembly intended for benefits to be recovered is invalid.  *See* Massingill, 176 P.3d at 820; Newton, 197 Colo. at 466-67, 594 P.2d at 1044-45.

2.      The Colorado Supreme Court has interpreted the uninsured motorist statute broadly, so as to put an individual injured by an uninsured or underinsured motorist in the same position as one injured by the tortfeasor. *See* Loar v. State Farm Mut. Auto Ins. Co., 143 P.3d 1083, 1085 (Colo. App. 2006).

3.      The Colorado Supreme Court has held that the uninsured motorist statute requires insurers to "offer UM/UIM coverage to a class as extensive as the class covered under the liability provision of an automobile insurance policy." Pacheco v. Shelter Mut. Ins. Co., 583 F.3d 735, 739 (10th Cir. 2009) (citing Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 98 (Colo. 1995)); *see* DeHerrera, 30 P.3d at 174.

4.      Excluding resident relatives from coverage narrows the limits of statutorily mandated coverage, and is thus impermissible.  *See* Pacheco, 583 F.3d at 740; DeHerrera, 30 P.3d at 174.

5.      At the time of the sale of the policy, because the policy was delivered and issued in Colorado, and the 1991 Buick was licensed for highway use in

Colorado, the express terms of C.R.S. § 10-4-609 govern the sale of the policy by the Defendant.  *See* C.R.S. § 10-4-609.

6.     The Defendant had a duty to issue a policy that complied with the express requirements of C.R.S. § 10-4-609.  *See* Kaercher v. Sater, 155 P.3d 437, 441 (Colo. App. 2006); C.R.S. § 10-4-609.

7.     The terms of the underinsured motorist benefits provision under the policy did not comply with C.R.S. § 10-4-609.

8.     The Plaintiff sustained damages in the form of unpaid medical expenses and a denial of underinsured motorist benefits under the policy.

9.     Because Suzanna Caldwell was clearly a resident relative at the time of contracting, and for the duration of the policy period, the Plaintiff's existing policy would have covered her while attending school in Pennsylvania.  Therefore, the sale of the additional policy was unnecessary (*See* Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Dep. of Karla Caldwell).  *See* Pacheco, 583 F.3d at 740, DeHerrera, 30 P.3d at 174.

10.    The Defendant was negligent for issuing a policy that did not comply with the statutory requirements of C.R.S. § 10-4-609 and issuing a policy that would have been unnecessary under existing law.

11.    The Defendant is liable for negligence.

### III. DAMAGES and COSTS

1.      The parties have stipulated to a bifurcated proceeding, separating the issues of liability and damages.

2.      The Plaintiff is entitled to an award of damages and costs in an amount to be determined at trial and by the court.

## IV. ORDER

**WHEREFOR**E, based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED**:

1)      That Defendant GEICO General Insurance Company's Motion for Summary  Judgment (docket no. 24) is **DENIED**.

2)      That Judgment is hereby entered in favor of the Plaintiff James D. Caldwell and against the Defendant GEICO General Insurance Company on the issue of liability under Counts I-III of the First Amended Complaint:

   a.  Count I – Declaratory Judgment pursuant to 28 U.S.C. § 2201 (1948).

   b.  Count II – Breach of Contract.

   c.  Count III – Negligence/Respondeat Superior Liability.

3)      That the parties shall forthwith meet and confer to see if they can agree upon the amount of damages and costs.  If they are able to agree, then they shall file a Stipulated Motion with the court as to such damages

and costs on or before March 29, 2010. If they are unable to agree,

then they shall file a Joint Status Report regarding the issue of the

amount of damages and costs on or before March 29, 2010.


      Done this 8th day of March 2010.


                    BY THE COURT:


                    <u>S/Michael J. Watanabe</u>
                    MICHAEL J. WATANABE
                    U.S. MAGISTRATE JUDGE